892 F.2d 1042
 1989-2 Trade Cases P 68,859
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America,
v.
CARILION HEALTH SYSTEM; Community Hospital of Roanoke Valley;
Lewis-Gale Hospital, Inc,; Voluntary Hospitals of America,
Inc.; American Medical Association, Amici Curiae.
 No. 89-2625.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 2, 1989.
Decided: Nov. 29, 1989.
Rehearing and Rehearing In Banc Denied Feb. 6, 1990.
 
 John Paul Fonte (Robert B. Nicholson; James F. Rill, Assistant Attorney General; Judy Whaley, Deputy Assistant Attorney General; Robert E. Bloch, Anthony E. Harris, Steven B. Kamer, Gregory B. Hovendon, Molly L. Debusschere, Seymour H. Dussman, on brief), for appellants.
 William Beverly Poff (Heman A. Marshall, III, Michael F. Urbanski, Woods, Rogers & Hazlegrove; William G. Kopit, Robert W. McCann, Epstein Becker & Green, P.C., on brief), for appellees.
 (Thomas Campbell, James W. Teevans, Gardner, Carton & Douglas; C. Scott Sykes, Jr., General Counsel, Voluntary Hospitals of America, Inc., on brief), for amicus curiae Voluntary Hospitals of America, Inc.
 (Kirk B. Johnson, General Counsel; Edward B. Hirshfeld, Association General Counsel, on brief), for amicus curiae American Medical Association.
 (William D. Iverson, Judith B. Sapp, COVINGTON & BURLING, on brief), for amicus curiae Lewis-Gale Hospital, Inc.
 Before HARRISON L. WINTER, K.K. HALL and PHILLIPS, Circuit Judges.
 PER CURIAM:
 
 
 1
 The government instituted this antitrust case to prevent the merger of two nonprofit hospitals in Roanoke, Virginia--Roanoke Memorial Hospital, owned by Carilion Health System, and Community Hospital of Roanoke. There is a third hospital facility in Roanoke, Lewis-Gale Hospital, a for-profit hospital which is owned by Hospital Corporation of America. The suit was brought under § 1 of the Sherman Act, 15 U.S.C. § 1, and § 7 of the Clayton Act, 15 U.S.C. § 18.
 
 
 2
 The district court dismissed the action under § 7 of the Clayton Act on the ground that it had no application because the merging corporations neither had stock nor were they subject to the jurisdiction of the Federal Trade Commission. It then tried the § 1 cause of action with an advisory jury. The jury found the relevant service or product market to include acute inpatient hospital services and certain outpatient health care services provided by various clinics. The jury found the relevant geographic market to be the Roanoke Valley, defined as the cities of Roanoke and Salem, Roanoke County including the Town of Vinton and adjacent portions of Montgomery, Craig, Floyd, Franklin, Bedford and Botetourt Counties that surround Roanoke County. Finally the jury found that the merger would not substantially reduce competition in the relevant market and would not constitute an unreasonable restraint of trade.
 
 
 3
 The district court then made its own findings of fact. It rejected the advisory jury's findings as to the relevant product market and the relevant geographic market. The district court's findings as to product market are best stated by a quotation from its opinion:
 
 
 4
 Various witnesses agreed that some medical needs are treated exclusively on an outpatient basis, while others are treated only in a hospital. Most also agreed, however, that a significant number of problems could be treated either on an in or outpatient basis. Reasonable doctors differ as to when a problem must be treated in a hospital or when outpatient treatment is appropriate. Moreover, various insurance carriers, including Blue Cross and Blue Shield of Virginia, two of whose executives testified at trial, have restructured their reimbursement policies in recent years in order to encourage patients to use outpatient services, which are less expensive than inpatient care. Because patients or their doctors can choose to have problems treated either in a hospital or in an outpatient clinic or doctor's office in a significant number of cases, the court finds that certain clinics and other providers of outpatient services compete with the defendants' hospitals to treat various medical needs.
 
 
 5
 United States v. Carilion Health System, 707 F.Supp. 840, 844-45 (W.D.Va.1989).
 
 
 6
 The district court found that the geographic market differed with respect to primary and secondary hospital care as a unit and tertiary hospital services. For the former the geographic area included all places from which Roanoke Memorial Hospital draws at least 100 patients per year. This area is more extensive than the Roanoke Valley area delineated by the advisory jury and includes additional counties in Virginia, some counties in West Virginia and the Virginia cities of Lynchburg, Radford and Galax. The geographic area of tertiary services is even larger. It includes Richmond and Charlottesville, Virginia, and Winston-Salem and Durham, North Carolina.
 
 
 7
 Finally the district court found that while the record was inadequate to predict the market share of the merged hospitals in the relevant geographic market, financial and legal barriers to the expansion of competition by other health care providers in the market were not so prohibitive that competition would be suppressed. Also the district court found that the intent of the merging corporations to increase their ability to compete indicated the reasonableness of the merger. Accordingly the district court gave judgment for defendants.
 
 
 8
 The government appeals. It contends that the district court was in error in failing to find that the product market is acute inpatient services and that patients seeking such services cannot feasibly turn to any alternative other than admission to a Roanoke Valley hospital for overnight care. The government also contends that the district court was in error in finding that the relevant geographic market extended beyond the Roanoke Valley, as found by the advisory jury, to include an additional fourteen Virginia and West Virginia counties plus three cities. When the relevant product and geographic markets are correctly defined, the government argues, the merged entity will have in excess of 70% of staffed beds, licensed beds, acute inpatient admissions, acute inpatient days, and acute inpatient gross revenues. This concentration, so the argument runs, makes new market entry unlikely, and thus constitutes a violation of § 1 of the Sherman Act. The government therefore asks that we direct the entry of judgment for it under § 1. Alternatively the government prays that if we conclude that further proceedings in the district court are indicated, we should hold that § 7 of the Clayton Act is applicable to this proposed merger and it too will be violated unless the merger is enjoined.[1]
 
 
 9
 In analyzing the government's challenge to the proposed merger under § 1 of the Sherman Act, we must (1) define the relevant product and geographic markets, (2) determine the market share of the proposed merged entity, and (3) assess the effect on competition and the reasonableness of the merger in light of all the circumstances. Antitrust Div., Department of Justice, Merger Guidelines, 49 Fed.Reg. 26,823 (1984), §§ 2-3. These are factual issues. H.J. Inc. v. ITT, 867 F.2d 1531, 1537 (8 Cir.1989); Oltz v. St. Peter's Community Hosp., 861 F.2d 1440, 1446 (9 Cir.1988). See also International Word Processors v. Power Dry, Inc., 792 F.2d 416, 430-31 (4 Cir.1986). The district court's determination of the product and geographic markets and the effect on competition of the merger is therefore subject to reversal only if clearly erroneous. Anderson v. Bessemer City, N.C., 470 U.S. 564 (1985).
 
 
 10
 a. Product Market
 
 
 11
 We have said that product market should include "those products or services which are 'reasonably interchangeable by consumers for the same purposes.' " Satellite Television v. Continental Cablevision, 714 F.2d 351, 355 (4 Cir.1983), quoting United States v. E.I. Dupont de Nemours & Co., 351 U.S. 377, 395 (1956). The district court found that the product market included both inpatient and outpatient services. The government contends that the district court should not have included outpatient services in the relevant product market. It argues that there is substantial evidence that most patients who are hospitalized do not have the option of substituting outpatient care.
 
 
 12
 In a merger of two large entities, such as the hospitals here, there is no single product market. The hospitals consist of a cluster of product markets, each with a different degree of substitutability between inpatient and outpatient services.[2] Thus, the answer to the question of whether outpatient services should be included in the product market will vary with each type of health care service at issue. Given that the district court was evaluating the reasonableness of the merger as a whole, and not just for a single type of service, the court had to determine whether the number of services subject to competition from outpatient facilities was significant relative to the entire hospital.
 
 
 13
 The district court decided that "a significant number of problems could be treated on an inpatient or outpatient basis." 707 F.Supp. at 844. In other words, the number of services subject to competition from outpatient facilities was significant enough to affect the hospitals' behavior. Thus, the court included outpatient services in its evaluation of the reasonableness of the proposed merger. Although the district court may not have stated its findings with the precision that would facilitate appellate review, we think that they were sufficiently set forth that we can fairly say that they are not clearly erroneous.
 
 
 14
 b. Geographic Market
 
 
 15
 After determining the product market, the district court defined the geographic market.[3] The geographic market should include all locations to which a consumer would travel to obtain the product if the seller were to raise the price. See Satellite Television v. Continental Cablevision, 714 F.2d 351, 357 (4 Cir.1983). In this case, the market should include all places to which patients would go if the hospitals were to raise the price of their services.
 
 
 16
 As discussed above, the district court defined the geographic market as any area from which the hospitals currently draw a significant number of patients (i.e., 100 or more). The government argues that even if a significant number of patients come from the areas defined by the court, those patients would not switch to other hospitals in the area because they perceive that Carilion, Community, and Lewis-Gale are better hospitals with higher quality services. While the government's argument has some force, the record does contain evidence that the hospitals compete within the areas defined by the district court, and we cannot say that this finding is clearly erroneous.
 
 
 17
 c. Reasonableness of the Merger
 
 
 18
 Under § 1 of the Sherman Act, the propriety of the merger is judged under the rule of reason. Broadcast Music v. CBS, Inc., 441 U.S. 1 (1979). While the Carilion hospital would gain a larger market share through the merger, the district court was not willing to presume anticompetitive effects. It found that substantial competitive pressure will exist from the excess capacity of existing hospitals (such as Lewis-Gale) and the outpatient alternatives. In addition, it found that the proposed merger would lead to substantial savings through more efficient use of equipment and space.
 
 
 19
 The government disagrees and argues that competitive pressures will be ineffective and any savings will not be passed on to consumers. The district court rejected these arguments on the basis of specific testimony and evidence and this finding too was not clearly erroneous. It follows that the judgment of the district court should be affirmed.
 
 
 20
 Because we see no need for further proceedings in the district court, we have no occasion to consider whether § 7 of the Clayton Act would apply to this merger.[4]
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 It is the government's view that in United States v. Philadelphia National Bank, 374 U.S. 321 (1963), the Supreme Court interpreted § 7 of the Clayton Act to apply to all mergers. However, the district court's dismissal of the § 7 claim was without significance, because, in the government's view, there is now no analytical distinction between claims arising under § 1 of the Sherman Act and § 7 of the Clayton Act. The government believes that the Supreme Court eliminated any distinction in United States v. First National Bank of Lexington, 376 U.S. 665 (1964). Thus, the government asks us to review the dismissal only if we remand the Sherman Act claim for further proceedings
 
 
 [2]
 An analogous situation arose in the context of bank mergers. There are separate markets for loans, checking accounts, certificates of deposit, etc. In Philadelphia National Bank, 374 U.S. 321 (1963), the Supreme Court grouped banking services together and considered all of the markets as one unit. For a discussion of the relative merits of this approach, see Baker, The Antitrust Analysis of Hospital Mergers and the Transformation of the Hospital Industry, 51 Law & Contemp.Probs. 93, 123-140 (1989)
 
 
 [3]
 As mentioned above, this analysis can be done for each type of service offered by the hospitals. The district court chose to define a geographic market for primary and secondary care as a unit and to define a separate market for tertiary care
 
 
 [4]
 A discussion of the applicability of § 7 to the merger of nonprofit hospitals and a collection of the pertinent authorities are contained in Baker, supra note 2, at 112-13